JACOB PARKER v. JOHN STEVENS et al.

A mortgagee who has assigned his mortgage by an instrument not under seal, and in whom the legal title to the mortgaged premises still remains, is not a necessary party to a bill of foreclosure filed by the assignee.[*]

It seems that the rule requiring all the parties in interest to be before the court, is to be regarded rather as a rule of convenience ; and where the legal right is entirely technical, and no beneficial purpose can be answered by enforcing the rule, it will not be followed.

BILL for foreclosure, filed 30th August, 1832. Answer by John Stevens, the mortgagor, one of the defendants, admitting the mortgage, but setting up payment as a defence. A decree pro confesso was taken against Hetfield, the other defendant, who was a second mortgagee. The cause was heard upon the bill, answer, replication and proofs.

*F. B. Chetwood,* for complainant.

*S. Scudder,* for defendant.

THE CHANCELLOR. The bond and mortgage on which this suit is brought, bears date the 23d December, 1796, and were given by John Stevens to Oliver Martin, to secure the payment of one hundred and ten pounds. On the 23d day of November, 1799, Martin assigned the mortgage to Joseph Shotwell, by an endorsement on the back of it, in the words and figures following :—" For value received, I assign this mortgage to Joseph Shotwell, his heirs and assigns. Witness my hand, this 23d day of 11th month, 1799." Signed, Oliver Martin—witness present, John Pearce. He also assigned the bond by an endorsement on the back of it, in the words and figures following :— " For value received, I assign all my right to the within bond to Joseph Shotwell, his heirs and assigns, and engage to be ac-

[*] See *Bruen* v. *Crane,* ante, vol. i. page 347 ; *Story's Eq. Pleading,* 147, sec. 153, 148, note 1.

countable for the payment thereof;—as witness my hand, this 23d day of the 11th month, 1799.          OLIVER MARTIN.

" Witness present—JOHN PEARCE."

On the 7th of March, 1832, the executors of Joseph Shotwell, by regular assignment, under hand and seal, transferred the mortgage to the complainant, who now brings suit against Stevens, the mortgagor, and Hetfield, who is a second mortgagee.

The defendant, Stevens, has answered the bill; and he insists, in his answer, that about the year 1798 or 1799, he built a saw-mill for the mortgagee, Oliver Martin, for which he was entitled to receive one hundred dollars : that he was, by their mutual agreement, to have credit for that amount on the mortgage, and he expected it was so credited, and knew not to the contrary until after the bond and mortgage were assigned to the present complainant. He alleges, that by giving this credit on the bond, it is not only paid, but more than paid.

There are several difficulties in the way of this defence. The first is, that the defendant has in no way proved the agreement set up in the answer, that the amount due for the work was to be credited on the mortgage as so much money paid. It is sufficiently proved that work was done ; and it is reasonable, from the evidence, to presume, that the worth of it was about one hundred dollars ; but whether it was paid for at the time, or what arrangement was made by the parties in relation to it, is not ascertained. The answer of the defendant cannot be received as evidence, and without it there is nothing to guide the court.

But aside from these legal objections, there is a difficulty in point of fact, that has not, as it appears to me, been overcome. The defendant has repeatedly, by his own acts, acknowledged the bond to be unpaid.

The bond was dated in 1796, and payable in 1798, without interest.   According to the receipts, it appears that in 1799 the defendant paid at one time fifty-three pounds and ten shillings, and at another four pounds and eleven shillings.   In 1805, after the assignment to Shotwell, he paid him twenty-eight pounds. Now the mill was built in 1798 or 1799.   If the one hundred

8

dollars for building it, be credited as of that time, according to the defendant's claim, then it is a matter of plain calculation, that when he made the payment of twenty-eight pounds in 1805, he overpaid the bond about two dollars; and yet, since that time, he has paid one hundred and fifty-two dollars upon it at different times. It is very difficult to conceive this to be the result of *mistake* entirely, unless coupled with great ignorance. But it does not appear that Stevens was an ignorant man. The plain and regular hand with which his name is written to the bond and mortgage, proves the reverse. He must have had some knowledge of figures and accounts; and under existing circumstances, in the absence of proof, it is more rational to conclude that the work was paid for in some way at the time, than that the defendant should neglect to take up his bond in 1805, when, according to his own statement, it must have been paid off, and afterwards keep paying on it, at different times, from 1805 to 1822, making a sum, in the whole, of more than one hundred and fifty dollars.

Taking these objections together, they appear to the court conclusive against the defence of payment set up by the defendant, Stevens.

Another difficulty is interposed by the defendant, not going to the merits, but to the mode of proceeding. He insists, that as Martin, the original mortgagee, did not assign the mortgage under his hand *and seal*, to Shotwell, the legal interest never passed, but is still in Martin; and therefore, that he should be a party to the bill.

The general rule in this court is, that all parties in interest should be before the court, so that a decree made may cover the whole case, and do perfect justice. Hence " the assignors of judgments and bonds should be made parties, they having a legal right which no assignment can transfer :" 1 *Vesey*, 463 ; 2 *Atk.* 235. Where choses in action are strictly of a legal character, the propriety of the rule is obvious, but even in such cases it is not strictly enforced. The legal right may be so entirely technical and unimportant as to warrant the court in pass-

[Parker v. Stevens et al.]

-ing it by, where its observance would be attended with great inconvenience, and answer no single beneficial purpose. In the case from *Atkyns*, the court said the rule was not uniform; but it was enforced in that case, because it was important to the rights of the defendant to have the answer of the assignor, and on that ground alone.*

In New-York it has been considered rather a rule of convenience, and when no beneficial interests are concerned or affected, it is not followed: *Wendell* v. *Van Rensselaer*, 1 *John. Chan. R.* 349; *Ex'rs of Brasher* v. *Van Cortlandt*, 2 *John. Chan. R.* 247.

It appears to the court, that in this case the proceeding would be wholly useless, and attended with great inconvenience and expense. The mortgage was assigned and delivered more than twenty-eight years ago. The assignees have been in possession of it ever since, receiving payments and enjoying all the beneficial interest of the property. According to the defendant's answer, the assignor, after making the assignment, became insolvent, and as many as fifteen or twenty years ago went to the western country, and has since died. What benefit, then, could it be to the defendant to stay these proceedings, until search could be made for the heirs? Their answer could give no relief to him; and if the mortgage money is paid under the decree of this court, and the mortgage cancelled, they can have no rights against him. The complainant is entitled to a decree.

---

* " It has been laid down in a book of very high authority, that if a bond or judgment be assigned, the assignor as well as the assignee must be a party, for the legal right remains in the assignor. But it may, perhaps, be doubted whether the doctrine is universally true. The true principle would seem to be, that in all cases where the assignment is absolute and unconditional, leaving no equitable interest whatever in the assignor, and the extent and validity of the assignment is not doubted or denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the latter a party." *Story's Eq. Pl.* 147.